

**FILED**

Feb 03 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            s/ armincortez        DEPUTY

**Plaintiff**: Daniel Ndizeye
**Address**: 711 51st St, San Diego, CA 92114-1001, USA
**Phone NO**: (619) 394-2453
**Email**: danielndizeye100@gmail.com

## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Daniel Ndizeye<br>**Plaintiff.**<br><br>v.<br><br>Judge Carolyn Caietti, in her official capacity as Judge of the Superior Court of California, County of San Diego<br>**Defendant.**<br>Case No. | **COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS**<br><br>DEMAND FOR JURY TRIAL<br><br>(1) Fourteenth Amendment (Due Process Clause)<br><br>(2) Violation of California Code of Civil Procedure §§ 170.1(a)(6)(A)(iii), 170.3(c)(5) and 170.4(d)<br><br>(3) Under 42 U.S.C. § 1983<br><br>Complaint filed: **'25CV0242 LL     DEB** |

### Notice of Submission of Clerk's Record as Exhibits

Plaintiff hereby notifies the Court that the Clerk's Record will be referenced as exhibits in support of Plaintiff's claims and arguments. These records will be submitted in conjunction with Plaintiff's Request for Judicial Notice, pursuant to *Federal Rule of Evidence 201*. The exhibits contain official court documents that are not subject to reasonable dispute and are capable of accurate and ready determination from reliable sources, thereby qualifying for judicial notice. Accordingly, Plaintiff respectfully requests that the Court take judicial notice of the Clerk's Record and consider the attached exhibits as part of the record in this matter.

### [TABLE OF CONTENTS]

I. INTRODUCTION ................................................................[3]

II. PARTIES ..................................................................... [4]

   A.  **Plaintiff, Daniel Ndizeye** ................................................ [4]

   B.  **Defendant, Honorable Carolyn Caietti** .................................. [4]

III. JURISDICTION AND VENUE ................................................ [4]

IV. STATEMENT OF FACTS ..................................................... [4]

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 1

**V. FACTUAL BACKGROUND** ............................................................................................................ *[4-5]*

**VI. LEGAL ARGUMENT** .............................................................................................................. *[5-18]*

    **C.  Distinguishing Administrative Acts from Judicial Acts to Establish a Due Process Violation** ....... *[5-7]*

    **D.  The Court's Threat of Arrest and Disregard for Judicial Notice Constitute Administrative Acts** ................................................................................................................................................ *[7-17]*

    **E.  Refusal to Rule on Judicial Notice Exceeds Jurisdiction, and Violates 'Ultimate Act' Doctrine"** ................................................................................................................................. *[17-18]*

**VII. CONCLUSION** ................................................................................................................ *[18-19]*

    **F.  WHEREFORE, Plaintiff respectfully requests that this Court** ................................... *[19]*

[TABLE OF AUTHORITIES]

**Cases**

*Forrester v. White*, 484 U.S. 219 (1988) ............................................................................. *[3, 5, 6, 7, 9]*

*Mireles v. Waco*, 502 U.S. 9 (1991) ................................................................................ *[3, 5, 16, 17, 18]*

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993) ...................................... *[5, 6, 7, 16]*

*Tumey v. Ohio*, 273 U.S. 510, 522 (1927) .......................................................................................... *[5]*

*Ex parte Virginia*, 100 U.S. 339, 340 & 348 (1879) ........................................................................ *[7]*

*Stapley v. Pestalozzi*, 733 F.3d 804, 812 (9th Cir. 2013) ................................................................ *[7]*

*Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 736 (1980) ................... *[7]*

*Mayberry v. Pennsylvania*, 400 U.S. 455, 465-466 (1971) ......................................................... *[8, 9]*

*United States v. Ritchie*, 342 F.3d 903, 908-909 (9th Cir. 2003) ............................................. *[8, 18]*

*Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ............................................. *[8, 9, 18]*

*Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ................................................................................... *[8]*

*Cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) .......................................................................... *[9, 14]*

*Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ............................................................................ *[6, 9]*

*Cf. Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516, 522 (9th Cir. 1983) .............................. *[9]*

*United States v. Thoms*, 684 F.3d 893, 901 & 903 (9th Cir. 2012) ............................................... *[9]*

*Sampson v. County of Los Angeles*, 974 F.3d 1012, 1016 (9th Cir. 2020) ................................... *[10]*

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ............................................................ *[10]*

*Padilla v. Immigration and Customs Enforcement*, 953 F.3d 1134, 1146 (9th Cir. 2020) .................................... *[10]*

*NAACP v. Button*, 371 U.S. 415, 429 (1963) ............................................................................................ *[11]*

*Porter v. Martinez*, 68 F.4th 429, 438 (9th Cir. 2023) ......................................................... *[11, 12, 13]*

*United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980) ..................................................... *[11]*

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 & 1108 (9th Cir. 2003) ...................................... *[13]*

*Cooper v. Pickett*, 122 F.3d 1186, 1196 (9th Cir. 1997) ......................................................... *[14]*

*In re Murchison*, 349 U.S. 133, 136 (1955) ................................................................................. *[14]*

*Cf. United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989) ................................. *[14]*

**Statutes**

Fourteenth Amendment (Due Process Clause) ....................................................... *[3, 4, 5, 18]*

42 U.S.C. § 1983 ................................................................................................... *[3, 4]*

28 U.S.C. § 2201 ................................................................................................... *[3, 4]*

28 U.S.C. § 1331 ......................................................................................................... *[4]*

28 U.S.C. § 1391(b) ................................................................................................... *[4]*

Cal. Civ. Proc. Code § 170.1(a)(6)(A)(iii) ........................................................................... *[4]*

Cal. Civ. Proc. Code § 170.4(d) ................................................ *[3, 4, 5, 6, 7, 16, 17, 18]*

Cal. Evid. Code §§ 452, 453 ................................................................................... *[8]*

Fed. R. Evid. 201 ................................................................................... *[3, 8, 18]*

## I.    INTRODUCTION

Plaintiff, Daniel Ndizeye, respectfully submits this Complaint for Declaratory Relief under *42 U.S.C. § 1983* and *28 U.S.C. § 2201*. Plaintiff alleges that Defendant, Honorable Carolyn Caietti ("Judge Caietti"), violated his Fourteenth Amendment right to an impartial tribunal by ruling on her own disqualification motion—an act that exceeds the bounds of judicial authority under *California Code of Civil Procedure § 170.4(d)* and is therefore not shielded by judicial immunity (*Mireles v. Waco*, 502 U.S. 9 (1991); *Forrester v. White*, 484 U.S. 219 (1988)). Plaintiff seeks only a declaration that Judge Caietti's self-ruling on disqualification, undertaken without proper

jurisdiction, contravenes his constitutional rights and does not constitute a judicial act within the meaning of immunity doctrines.

## II.    PARTIES

Plaintiff, **Daniel Ndizeye**, is a resident of San Diego, California. He appeared as a pro se litigant in a civil action before Judge Caietti in the Superior Court of California, County of San Diego.

Defendant, **Honorable Carolyn Caietti**, is a judge of the Superior Court of California, County of San Diego, sued in her official capacity. Plaintiff alleges that she violated his right to due process by improperly ruling on her own disqualification motion in clear contravention of *California Code of Civil Procedure § 170.4(d)*.

## III.    JURISDICTION AND VENUE

This Court has federal question jurisdiction under *28 U.S.C. § 1331* because Plaintiff's claims arise under the United States Constitution and *42 U.S.C. § 1983*. Declaratory relief is authorized by *28 U.S.C. § 2201*.

Venue is proper in this District under *28 U.S.C. § 1391(b)* because the events giving rise to this claim occurred in San Diego, California, where Defendant presides and Plaintiff's underlying proceedings took place.

## IV.    STATEMENT OF FACTS

Plaintiff filed a motion for disqualification of Defendant Judge pursuant to California Code of Civil Procedure ("CCP") *§§ 170.1(a)(6)(A)(iii)* and *170.4(d)*, asserting that Defendant Judge exhibited bias and could not impartially preside over Plaintiff's case.

*California Code of Civil Procedure § 170.4(d)* explicitly prohibits a judge from ruling on their own disqualification motion, requiring such motions to be decided by a neutral judge.

Defendant Judge's actions constituted a procedural violation of *CCP § 170.4(d)* and a substantive violation of Plaintiff's constitutional right to an impartial tribunal as guaranteed by the Due Process Clause of the Fourteenth Amendment.

The improper ruling directly prejudiced Plaintiff by allowing Defendant Judge to remain on the case, creating a clear conflict of interest and undermining the fairness of the judicial process.

## V.    FACTUAL BACKGROUND

In an underlying state-court matter, Plaintiff filed a valid Statement of Disqualification under *California Code of Civil Procedure §§ 170.1(a)(6)(A)(iii), 170.4(d)*, and related provisions, alleging that Judge Caietti's

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 4

impartiality was compromised. Rather than referring this disqualification question to a neutral judge, Judge Caietti ruled on it herself.

Plaintiff contends that such an act is administrative or "non-judicial" in nature and is explicitly prohibited by *CCP § 170.4(d)*. Because the statute bars a judge from deciding her own disqualification, Judge Caietti's act was taken in the "complete absence of jurisdiction," rendering judicial immunity inapplicable (*Stump v. Sparkman*, 435 U.S. 349 (1978)).

After striking Plaintiff's disqualification motion, Judge Caietti continued to preside over the matter. Plaintiff believes this created a structural due process violation by depriving him of an impartial forum, as recognized in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

## VI.    LEGAL ARGUMENT

**C.    Distinguishing Administrative Acts from Judicial Acts to Establish a Due Process Violation**

California law unequivocally prohibits a judge from deciding her own disqualification motion (*CCP § 170.4(d)*), any such act is necessarily outside the scope of judicial authority (see *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). Judicial immunity protects the latter—but not the former—because administrative tasks are subject to clear (*Forrester v. White*, 484 U.S. 219, 229 (1988)), mandatory directives, devoid of the interpretive analysis characteristic of genuine judicial decision-making. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). Judicial immunity does not shield judges from liability for acts taken "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357-58 (1978). Consequently, the presiding judge's self-ruling on the disqualification motion here qualifies as an "administrative" or nonjudicial function, removing it from the protection of judicial immunity. When a judge administers a procedure that is forbidden by law, she effectively bypasses a critical procedural safeguard intended to ensure fairness (see *Tumey v. Ohio*, 273 U.S. 510, 522 (1927)). Such administrative misconduct falls outside the scope of judicial immunity and directly undermines Plaintiff's Fourteenth Amendment right to due process by permitting an unauthorized judge to preside over proceedings conduct.

**Administrative (Non-Judicial) Acts: (*Definition*)** Administrative or ministerial acts do not call for the exercise of judicial discretion; rather, they entail compliance with mandatory rules or duties in which the judge's role is purely procedural or supervisory. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). These

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 5

tasks are more akin to following a "stop sign"—the law unequivocally requires one to stop, and there is no room for subjective interpretation or legal balancing. (*No Immunity*) Because administrative acts lack the defining characteristics of judicial decision-making, these acts do not entail interpreting or applying law to disputed facts, they do **not** constitute true "judicial acts." They fall outside the shield of judicial immunity, especially when a judge acts in violation of a clear statutory command. *Forrester*, 484 U.S. at 229. Consequently, a judge who performs such an act in violation of a mandatory directive cannot claim judicial immunity for the resulting harm.

**Examples**: (*Hiring and Firing Court Personnel*) though judges may direct court employees, these administrative tasks are not protected by judicial immunity. *Id.* (*Scheduling and Resource Allocation*) setting hearing calendars or allocating staff do not involve legal interpretation or deciding contested facts. (*Performing Duties Prohibited by Statute*) where a judge is barred from taking a particular action—such as ruling on her own disqualification—the judge has no discretion to exercise and thus any action taken is not a judicial act.

**Mandatory Statutory Prohibition**: *California Code of Civil Procedure § 170.4(d)* provides that a judge *"shall have no power to act"* on the merits of a disqualification motion once it is filed. Such absolute language removes any element of discretionary adjudication—much like a driver at a stop sign. Deciding one's own disqualification therefore is a prohibited administrative task—a mandatory stop—beyond the realm of judicial discretion, not the legitimate exercise of judicial decision-making, *Antoine*, 508 U.S. at 436. A stop sign compels every driver to stop, leaving no room for deciding whether or how long to pause; the law is absolute. Judicial acts involve legal interpretation and the balancing of contested issues within the court's jurisdiction. *Pierson*, 386 U.S. at 554. Ruling on one's own disqualification under *CCP § 170.4(d)* is a procedural matter required by statute and does not involve resolving substantive legal disputes (*Ndizeye v. City of San Diego* Road Negligence). By acting contrary to this command, she exceeded the permissible scope of judicial authority, (see *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

**Forrester, v. White 484 U.S. at 228-229**: *"... for example, this Court declined to extend immunity to a county judge who had been charged in a criminal indictment with discriminating on the basis of race in selecting trial jurors for the county's courts... In the case before us, we think it clear that Judge White was acting in an administrative capacity when he demoted and discharged Forrester... Judge Posner pointed out below, a judge who hires or fires a probation officer cannot meaningfully be distinguished from a district attorney who hires and fires*

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 6

*assistant district attorneys, or indeed from any other Executive Branch official who is responsible for making such employment decisions."* The court's reasoning in Judge White's case, like ruling on one's own disqualification under *CCP § 170.4(d)* are administrative, not judicial. These acts are procedural and governed by statutory requirements. (see *Ex parte Virginia,* 100 U.S. 339, 340 & 348 (1879)); it is a procedural determination dictated by statutory mandates. Do not advance the resolution of the case's substantive issues. Fall outside the protection of judicial immunity because they are administrative failures, much like hiring, firing, or managing court personnel.

**No Interpretive Component:** Unlike choosing which lane to change into (a discretionary, interpretive function) (see *Stapley v. Pestalozzi,* 733 F.3d 804, 812 (9th Cir. 2013)), the judge's self-disqualification is an administrative task that must be followed without independent analysis, (see *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 736 (1980)). By ignoring the statute's plain, mandatory command, the judge exceeded her authority and performed an act outside the scope of judicial immunity. *Antoine,* 508 U.S. at 435-36. When changing lanes, a driver must determine the best lane to occupy based on conditions, speed, traffic, and preference. There is room for choice and legal or factual "balancing." Ruling on motions, evaluating witness testimony, or interpreting nuanced statutes are judicial tasks involving discretionary legal judgment, which are shielded by immunity. *Stump,* 435 U.S. at 356-57.

**Stapley v. Pestalozzi, 733 F.3d at 812 (9th Cir. 2013)**: *"We hold only that, under the circumstances presented here, Defendants are not entitled to absolute immunity because their actions were not sufficiently "analogous to those of a prosecutor."* Ignoring *CCP § 170.4(d)* is analogous to enforcement officers violating procedural laws, as seen in *Ex parte Virginia* and *Pulliam v. Allen.* These actions are not judicial in nature. **Stump, 435 U.S. at 362**: *"...that the county judge sued in that case was not entitled to judicial immunity because his service on a board with only legislative and administrative powers did not constitute a judicial act."* Thus, the judge was not entitled to judicial immunity for actions taken in that capacity.

**D.    The Court's Threat of Arrest and Disregard for Judicial Notice Constitute Administrative Acts**

Plaintiff's request for judicial notice was dismissed by claiming uncertainty about *"previous demurrer or this demurrer"* it applied to (Refer RJN *CT, 000199-000201*) (Refer RJN *CT, 000184-000190*). These actions, which involve no interpretive or adjudicative discretion, are administrative in nature and lie outside the umbrella of judicial immunity. See *Forrester v. White,* 484 U.S. 219, 227-29 (1988) (distinguishing administrative acts from acts

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 7

requiring judicial discretion). Moreover, such conduct contravenes fundamental due process protections, as it obstructs a party's right to meaningfully present evidence and be heard in a non-coercive environment. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465-466 (1971) (admonishing that judges must not employ intimidation or hostility that chills a litigant's ability to argue legal positions).

**The Courts Mischaracterizing Judicial Notice as Tied to a Specific Demurrer:** *"Accordingly, it is unclear whether Plaintiff's request for judicial notice at ROA 51 and filed the day before the instant demurrer was to the previous demurrer or this demurrer. (Refer FJ, MO, CT. 000430, P. 1, ¶ 5) …"*

**Judicial Notice Depends on the Nature of the Evidence, Not the Complaint**: Under *Federal Rule of Evidence 201*—as well as California provisions (*California Evidence Code §§ 452* and *453*)—the decision whether to take notice of undisputed factual material hinges on whether the proffered items are the kind of facts or records *"not subject to reasonable dispute."* If the evidence satisfies the criteria for judicial notice, the court has an obligation to consider it on its own merits (see *United States v. Ritchie*, 342 F.3d 903, 908-909 (9th Cir. 2003). The judge's professed confusion over *"which demurrer"* the request applied to is irrelevant to the legal basis for judicial notice. By refusing such notice, the judge violated a procedural requirement—one that leaves no interpretive space for balancing or textual analysis, thus constituting an administrative misstep rather than a judicial function. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (court must consider whether documents are of a type properly noticed, rather than fixating on procedural labels). The court's role here was purely administrative—i.e., to confirm whether the materials qualified for notice, not to weigh complex evidence. Because statutory and factual eligibility for judicial notice are independent of the complaint or demurrer involved, summarily rejecting the request indicates a refusal to fulfill a basic administrative obligation. Where a request for judicial notice involves official records, statutes, or photographs that clarify the factual context (see *Exhibit 1A, 16A-30A*), the court possesses no *"creative"* latitude to disregard them based on confusion or preference. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (courts must accept verifiable facts appropriate for judicial notice).

**Failure to Properly Address Judicial Notice Request**: As the Supreme Court has stressed, due process entails "an opportunity to present every available defense" or claim. *Lindsey v. Normet*, 405 U.S. 56, 66 (1972). By summarily dismissing Plaintiff's request for judicial notice on the tenuous ground that *"we don't know what demurrer it refers to,"* the court blocked Plaintiff from presenting evidence that may have been pivotal to

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 8

understanding the factual or statutory framework of the case. The judge stated that she was *"unclear whether the request was intended for the previous demurrer or this demurrer,"* as if that confusion alone justified rejecting the evidence. *Cf. Foman v. Davis,* 371 U.S. 178, 182 (1962) ("It is contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of ... mere technicalities." However, if any uncertainty arose, the proper course would have been to seek clarification—not to summarily ignore the request. *Conley v. Gibson,* 355 U.S. 41, 48 (1957) (emphasizing courts' duty to resolve procedural ambiguities in a way that promotes fairness and full presentation of relevant information).

(Refer *RT, P. 9, l 5* on 04/05/2024: **MR. NDIZEYE formally objected to the action**: *"Okay. Well, I just wanted ---",* but the court prevented him from formally objecting (Refer RT, *P. 9, line 6*, especially in cases involving ongoing harm and public safety (Of which the Plaintiff is a member).

**The Court's Threat of Arrest:** *"There's nothing further. I am moving on to another matter. MY DEPUTY WILL ESCORT YOU OUT IF YOU DON'T GET UP* (Refer *RT. P. 9, line 6-8* on 04/05/2024)." Threatening a litigant with arrest solely for seeking clarification does not involve legal interpretation or fact-finding—traditional hallmarks of a judicial act (*Pierson v. Ray,* 386 U.S. 547, 553-54 (1967)). Instead, it is administrative or extrajudicial behavior that does not merit judicial immunity. *Cf. Miranda v. Southern Pac. Transp. Co.,* 710 F.2d 516, 522 (9th Cir. 1983) (distinguishing between discretionary rulings and nonjudicial acts devoid of adjudicatory substance).

**Coercion Undermines Impartial Adjudication**: The judge's remarks are not part of a reasoned ruling or any legal interpretation. Rather, they reflect an administrative or disciplinary function carried out in a manner that intimidates and suppresses litigant participation. *Cf. Mayberry,* 400 U.S. at 466 (condemning judges' use of threats or hostility that impinge on a party's ability to present arguments). Because these remarks serve purely to compel physical compliance rather than interpret the law, they have no nexus to the kind of judicial act shielded by immunity. *Forrester,* 484 U.S. at 229. A judge's authority to maintain courtroom order does not permit her to squelch a litigant's lawful efforts to clarify a procedural matter—particularly one involving the fundamental right to present evidence. *See United States v. Thoms,* 684 F.3d 893, 901 & 903 (9th Cir. 2012) (noting that while courts have leeway to manage proceedings, they must not abridge a party's right to a fair hearing). The threat of arrest here

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 9

served no legitimate judicial function; instead, it cut off Plaintiff's opportunity to ensure that his proffered evidence was properly considered.

**Threatening Physical Removal Instead of Resolving Procedural Disputes**: When a judge deploys threats of arrest to curtail a party's attempt to clarify procedural confusion, the proceeding veers from impartial adjudication. *Sampson v. County of Los Angeles,* 974 F.3d 1012, 1016 (9th Cir. 2020) (a court's role is to ensure a fair hearing, not stifle legitimate procedural questions). This type of intimidation surpasses the protective scope of judicial immunity, as it does not advance a reasoned legal decision but instead administratively represses a litigant (see *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). *Federal Rules of Civil Procedure Rule 6(c)(1)* mandates that a written motion and notice of the hearing must be served at least **14 days** before the scheduled time. Failure to provide proper notice can infringe upon a party's due process rights. In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950), the Supreme Court emphasized that notice must be *"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."*

**The Court's Failure to Provide Notice Rescheduled Hearing:** *"We're not hearing your case today, so don't get too comfortable* (Refer *RT. P. 3, line 13-15* on 04/05/2024) ....*"* The Defendant neither requested an extension of time nor sought to reschedule the hearing. Instead, the judge unilaterally assumed the Defendant's intentions, erroneously presuming that the Defendant did not wish to attend the hearing (*CT, 000326* and *RT, P.1-10* on 04/05/2024).

**The Court:** *"This is for the benefit of the City attorney* (Refer *RT. P. 3, line 16* on 04/05/2024).*"* Instead, the Honorable Judge rescheduled the hearing spontaneously at the moment when Plaintiff had already taken their seat and was prepared to present their case without providing constructive notice (see *Padilla v. Immigration and Customs Enforcement,* 953 F.3d 1134, 1142 (9th Cir. 2020): (*"... all persons in the United States—regardless of their citizenship status, means or legality of entry, or length of stay—are entitled to the protections of the Due Process Clause;*(Refer FJ, MO, *CT. 000430, P. 1, ¶ 5 "previous demurrer or this demurrer"*), where the court found that insufficient notice of hearings undermined the fairness of proceedings. When Plaintiff attempted to address the denial of judicial notice and other procedural irregularities at the April 5, 2024, hearing, he was met with threats of arrest rather than an impartial and orderly resolution of the procedural confusion.

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 10

The record reflects that Plaintiff attended all hearings, including those dismissed without proper notification (*CT, 000326*) to Plaintiff (see *NAACP v. Button*, 371 U.S. 415, 429 (1963)) (*"... litigation is not a technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment by all government, federal, state and local, for the members of the Negro community in this country. It is thus a form of political expression."*) However, after the judge issued a threat against Plaintiff, he no longer appeared in court in person. Plaintiff's decision to attend the May 2nd hearing remotely (*CT, 000430*), rather than in person, was driven by fear of potential repercussions from the judge if Plaintiff presented arguments the judge disfavored (*Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965)). The judge's prior threat caused Plaintiff to fear arrest if his arguments were perceived as unfavorable, leading him to temper his advocacy during the hearing (*Porter v. Martinez*, 68 F.4th 429, 438 (9th Cir. 2023)). As a result, Plaintiff's ability to effectively present his case was significantly impaired, as he refrained from fully asserting his arguments to avoid further conflict with the judge. *See United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980); *"...establishing an objective standard which required disqualification "if there is a reasonable factual basis for doubting the judge's impartiality."* (acknowledging that fear of judicial reprisal can chill the robust advocacy envisioned by due process). Degrading a party's confidence in impartial treatment effectively undermines the litigant's right to present evidence and arguments freely.

**Hearing Date: January 26, 2023**

**Plaintiff (self-represented), addressing the bench**:

*"Your Honor, with all due respect, there is no justification for allowing the Defendant three months to amend a demurrer. The Defendant is well-versed in the rules, and—frankly—this delay appears to be a calculated tactic to derail my preparation. I have invested significant time studying the relevant statutes and case law to properly present my arguments (CT, 000167, ¶ 2)."*

**Judge Carolyn Caietti** (*clearly impatient, leaning forward in her seat*):

(*Sighing loudly and rolling her eyes.*)

*"Listen to me, kid. I've got decades of judicial experience, and I've seen your type come and go. You don't belong in this courtroom. You're not an attorney, and you certainly shouldn't be here playing lawyer."*

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 11

**Plaintiff:**

"Your Honor, as a litigant, I have a constitutional right to be heard, regardless of my representation status. Both state law and federal law permit individuals to present their own cases if they choose."

**Judge Carolyn Caietti** (*sneers, her tone dripping with condescension*):

"I don't need a civics lesson from someone who can barely pronounce half the legal terms. You people always think you understand the law just because you read a few pages online."

**Plaintiff:**

"Your Honor, I assure you, I've done more than just read a few pages. I've diligently researched procedural codes and precedent to ensure I'm following the proper rules."

**Judge Carolyn Caietti** (*narrows her eyes, leaning back in her chair as though bored*):

"Oh, spare me. You can quote some code sections and case citations—it doesn't make you a real lawyer. And let's be honest: it's not just about being self-represented. You're from Nigeria or some other chaotic place, aren't you?"

**Plaintiff:**

"I'm Congolese, Your Honor, not Nigerian. And again, I have the right to be here, to be heard, and to ensure my case is handled fairly."

**Judge Carolyn Caietti** (*waves off Plaintiff's response, her voice cold*):

"Nigeria, Congo—it's all the same to me. All I see is ignorance. This is my courtroom, and I decide what happens here. If I want to grant the Defendant three months or three years, that's my prerogative. You can't possibly appreciate the complexities involved without a formal legal education."

**Plaintiff** (*visibly disturbed by the remarks*):

"Your Honor, I'm formally requesting that a court reporter be present at the next hearing. Given what's transpired, I want to ensure there's a clear and accurate record of everything said in this courtroom."

**Judge Carolyn Caietti** (*smirks, then shrugs*):

"That's your right... theoretically. But let me remind you: a court reporter won't help if you can't make a proper legal argument in the first place. The law isn't some game you can master with a few hours of reading. Now, are we done here?"

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 12

**The order incorrectly references a "Second Amended Complaint":**

**Plaintiff** (*calmly, speaking into the microphone for the record*):

"Yes, Your Honor. I've submitted the original complaint and the one amended complaint I filed. There are only two complaints in total. The label "Second Amended Complaint" is an error due to the clerk's mislabeling of the PLD-C 001 form (*CT, 000191-192, P. 1-2, line 22-17*). I respectfully request the court correct the record to reflect that I have only amended once (*CT, 000168*)."

**Judge Carolyn Caietti** (*smiles coolly, scanning papers*):

"That's not how my records read. And my records show you've already amended twice. End of story (*CT, 000168*)."

**Plaintiff**:

"Your Honor, with all due respect, the physical filings prove otherwise. You can see the form was plainly intended as an amended complaint, not a fresh lawsuit. Even a cursory review confirms it."

**Judge Carolyn Caietti** (*closes the file abruptly*):

"I don't need a lecture on how to read a complaint. I've made my decision, and I stand by the order. If you don't like it, you're free to file a motion or an appeal. But let's be honest—your motions thus far haven't been… persuasive (*CT, 000168;* "Plaintiff's Motion for Reconsideration is moot")."

**Plaintiff** (*maintaining composure*):

"Yes, Your Honor. For the record, I strongly object and will provide any necessary supplemental evidence to clarify this point, including the originally filed documents and the clerk's notes."

**Judge Carolyn Caietti** (*shrugs dismissively*):

"Do what you must. But don't expect any special treatment just because you're self-represented… or from somewhere else entirely." As a result of this exchange, Plaintiff requested the presence of a court reporter during subsequent hearings on April 8, 2024 (Refer *RT, P.1-10*) and May 2, 2024, (Refer *RT, P. 51-65*) to ensure an accurate record is kept and to prevent inappropriate remarks from going undocumented.

**Record Forgery Exceeded Permissible Judicial Discretion**: When a court insists on maintaining the mislabeling, it creates confusion in the record and perpetuates delay as Plaintiff must expend time and resources challenging the docket's accuracy (*CT, 000168*). *See Vess v. Ciba-Geigy Corp.* USA, 317 F.3d 1097, 1106 & 1108

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 13

(9th Cir. 2003) (observing that clarity in pleadings is essential to efficient case management). This confusion, in turn, prevents the case from advancing effectively on the merits, undermining the judicial system's commitment to swift and just resolutions. Similarly, if the judge mischaracterized an "Amended Complaint" as a "**Second Amended Complaint**" to deny further amendments—contrary to procedural rules—she operated outside any recognized discretion. *Cf. Foman v. Davis,* 371 U.S. 178, 182 (1962) ("It is contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of ... mere technicalities."), consistent with *Fed. R. Civ. P. 11(b),* which ensures that factual contentions have evidentiary support and are not made for improper purposes. Such a departure from the rules is not a valid judicial act but an ultra vires measure, rendering immunity inapplicable (see *Cooper v. Pickett,* 122 F.3d 1186, 1196 (9th Cir. 1997)). Plaintiff's repeated attempts to clarify the record were rebuffed, leaving him to confront a judicial environment that hindered a complete presentation of his case. *See In re Murchison,* 349 U.S. 133, 136 (1955) (emphasizing a litigant's right to a neutral decision-maker). The uncorrected mislabeling hamstrung Plaintiff's litigation strategy, compromised future amendment rights, and exemplified a procedural irregularity affecting due process.

This hostile tone persisted when the judge refused to correct the record—even after the court clerk acknowledged the filing was the first amended complaint, not the second. *Cf. United States v. Sears, Roebuck & Co.,* 877 F.2d 734, 739 (9th Cir. 1989) (stating that factual errors made in bad faith or due to partiality can give rise to serious due process concerns). By insisting on calling it a second amended complaint, the judge skewed the docket to Plaintiff's detriment, effectively curtailing the ability to amend again. Federal courts endorse a liberal amendment policy—particularly for pro se litigants—to ensure meritorious claims are not prematurely cut off. *See Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) *"We have noted frequently that the "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant."* When the judge mislabels the complaint in order to limit additional amendments, the court effectively denies Plaintiff the full benefit of the rules of civil procedure, infringing upon the right to have his claims addressed on a fair and accurate record (*Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987)). While judges enjoy broad discretion to manage dockets and impose deadlines, they may not artificially limit a litigant's opportunity to amend by mislabeling a filing as "second amended" when, in fact, there has been only one amendment. *Cf. DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In this instance, the judge insisted on treating the pleading as a second amended complaint despite Plaintiff's

evidence to the contrary—an act suggesting either willful disregard or improper bias, rather than a legitimate exercise of judicial discretion.

**Plaintiff's Statement**: *"Your Honor, I did bring this issue as a class action lawsuit. And according to Federal Rule 23, which California is governed by, it never states that self-represented litigants are required to be attorneys to bring up a class action lawsuit (Refer RT, P. 5, line 4-8, 04/05/2024)."*

*"I want recognition, your Honor, are you recognizing this case as a class action or as a civil individual party* (Plaintiff was forced to proceed as a self-represented individual, despite the complaint being designed as a class action. The court denied Plaintiff the opportunity to amend the complaint to reflect his self-represented status (Refer FJ, MO, *Dkt. No. 000430, P. 2, ¶ 10* and *13*) ... *under Federal Rule 23 and California Civil Procedure § 383* (Refer RT, *P. 58, line 9-11*, 05/02/2024)."

**Court's Response**: *"This is not a dialogue with the Court* (The Cplt was initially filed as a class action lawsuit (Refer *FAC, Docket No. 000114-000133*), therefore dialogue with the court is warranted, (Refer RT, *P. 58, line 12-13,* 05/02/2024) ..."

An act is **ultra vires** when performed without legal authority or jurisdiction, falling outside a judge's lawful power and beyond the scope of immunity for judicial acts. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689 (1949) (explaining that officials exceed their power *"when they act beyond the scope of their statutory authority"*); *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974). **Larson, 337 U.S. at 683**: *"The action of an officer of the sovereign (be it holding, taking or otherwise legally affecting a plaintiff's property) can be regarded as so "illegal" as to permit a suit for specific relief against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void."* An official exceeding their statutory authority acts beyond the sovereign's scope and may face individual liability. A judge acting ultra vires is not interpreting law or weighing evidence; she is contravening a mandatory legal directive. Judicial immunity covers acts "intimately associated with the judicial phase" of litigation.

*Butz v. Economou*, 438 U.S. 478, 515 (1978) *"Nor did either of those cases purport to abolish the liability of federal officers for actions manifestly beyond their line of duty; if they are accountable when they stray beyond the plain limits of their statutory authority, it would be incongruous to hold that they may nevertheless willfully or knowingly violate constitutional rights without fear of liability."* When a judge's jurisdiction is expressly limited by

---

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - **15**

statute (*CCP 170.4(d)*)—such as a prohibition against ruling on her own disqualification—any contrary conduct is without legal basis and therefore ultra vires. *See Mireles v. Waco,* 502 U.S. 9, 11 (1991) (noting that immunity does not apply when a judge has *"no jurisdiction at all"*).

Plaintiff additionally contends that the presiding judge's actions and rulings effectively **enforced unconstitutional practices**. *In Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 876 (2009), *"the probability of actual bias on the part of the judge… is too high to be constitutionally tolerable."* The judge's threat of arrest for seeking clarification, and her overt hostility toward Plaintiff's attempts to be heard, also constitute the enforcement of an *unconstitutional* courtroom practice that chills a litigant's fundamental right to advocate. *Taylor v. Hayes,* 418 U.S. 488, 501-03 (1974), emphasizes that judicial conduct or sanctions cannot suppress a litigant's legitimate right to be heard. When a judge employs threats or intimidation for non-disruptive questions, she is not enforcing valid law but wielding power in a manner that abridges constitutional safeguards—making it an unconstitutional "rule" in practice. *Liteky v. United States,* 510 U.S. 540 (1994), notes that serious bias or prejudice, especially when it reveals a "deep-seated favoritism or antagonism," triggers disqualification in federal courts.

**No Judicial Interpretation or Discretion Involved**: Judicial immunity only extends to acts that are intrinsically adjudicative, requiring interpretation or resolution of legal disputes. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Threatening to arrest a litigant for requesting clarifications, or disregarding a judicial-notice motion because of procedural confusion, neither calls for judicial reasoning nor is tied to the merits of the underlying controversy. The question of whether Plaintiff's proffered evidence was relevant or "not subject to reasonable dispute" demanded a straightforward, administrative review. Tying it incorrectly to "which demurrer was pending" bears no resemblance to a judicial act that interprets or resolves legal or factual disputes. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993) (rejecting immunity for tasks not implicating adjudicative judgment). Similarly, threatening a litigant with arrest for pursuing clarification furthers no valid legal objective and therefore cannot be cloaked under the umbrella of judicial immunity.

**Actions in the "Complete Absence of Jurisdiction"**: By failing to perform the basic administrative duty to consider undisputed facts, and by seeking to remove Plaintiff physically without addressing his procedural rights, the judge acted in a manner wholly disconnected from her legitimate jurisdiction. *Cf. Bradley v. Fisher,* 80 U.S. 335, 351 (1872) (judicial immunity does not extend where there is a total lack of authority to undertake the act). Judicial

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 16

immunity generally extends to a judge's discretionary rulings on matters within the court's jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). By contrast, the judge's threat of arrest and refusal to consider judicial notice due to an alleged confusion about which demurrer was at issue are plainly administrative tasks that circumvented mandatory procedural duties. Where a judge abandons the process for clarifying factual materials essential to the case, she steps outside the realm of legitimate judicial discretion. *Cf. Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

**E.        Refusal to Rule on Judicial Notice Exceeds Jurisdiction, and Violates 'Ultimate Act' Doctrine"**

**Jurisdictional Overreach**: Under the "ultimate act" doctrine, judicial immunity protects only those acts that represent the final, discretionary adjudications of a court on matters squarely within its jurisdiction. *Moore v. Brewster*, 96 F.3d 1240, 1243 (9th Cir. 1996). If a judge acts in a manner that does not resolve the dispute—or refuses to address a motion the court is bound to rule upon—she is not performing an "ultimate judicial act" but rather sidestepping it. *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1303 (9th Cir. 1989). Such a departure from adjudicative duty exceeds the judge's lawful authority and thus lies outside the shield of judicial immunity. The question of *"Should this judge recuse?"* is removed from her discretion by a mandatory procedural rule (*CCP § 170.4(d)*). A "judicial act" arises when a judge applies legal standards to contested facts or conflicting legal positions presented by opposing parties. *See Miller v. Gammie,* 335 F.3d 889, 892 (9th Cir. 2003) (emphasizing that judicial acts require the balancing of legal or factual contentions); "… *absolute immunity depend on the particular function performed rather than on whether the state officer's position had a general relationship to a judicial proceeding."* Here, the judge is not asked to examine legal arguments from adversarial parties. Rather, she is simply commanded to step aside. *See Stump v. Sparkman,* 435 U.S. 349, 362 (1978). This adversarial element is crucial: it ensures that the judge's rulings result from the weighing of competing arguments in a dispute. Where there is no conflict requiring resolution, the judge is not truly "judging"; rather, she is fulfilling an administrative or ministerial duty.

**Wright v. Beck, 981 F.3d 719, 737 (9th Cir. 2020):** *"We also reject Defendants' contention that they are entitled to "derivative, quasi-judicial immunity" because, once the LAPD seized the contested firearms by warrant, "the City" acted as a court custodian subject to court orders. That immunity extends to nonjudicial officers "only if they perform official duties that are functionally comparable to those of judges, i.e., duties that involve the exercise*

*of discretion in resolving disputes."* Without a conflict to adjudicate, the judge's action is non-adversarial, hence non-judicial.

**Requirement to Rule on Pending Motions**: A judge who willfully ignores or refuses to consider a properly filed motion acts in a manner inconsistent with the judicial function, when a court faces a motion— including a request for judicial notice that meets statutory criteria—it is obliged to render a decision, regardless of the judge's personal feelings or predictions about the motion's merits. *See Ashelman v. Pope,* 793 F.2d 1072, 1076-77 (9th Cir. 1986) (en banc); *Mireles v. Waco,* 502 U.S. 9, 11 (1991). Even if the judge ultimately denies the motion, whether by dismissal, deferral, or plain silence the judge must still address it in a reasoned manner and cannot simply disregard it. When this obligation is abandoned—especially in the face of a statutory or rule-based directive—the judge steps beyond the protective scope of judicial immunity. A judge's authority to preside exists only so long as she discharges her duty to apply and interpret the law. Determining whether to take judicial notice focuses on whether an item or fact is "not subject to reasonable dispute" (*Fed. R. Evid. 201(b)*); it does not implicate the main legal or factual controversy between the parties. Failing to rule on a motion for judicial notice, therefore, does nothing to advance or resolve the primary dispute. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). By refusing to decide whether the evidence proffered for judicial notice should be considered, the judge effectively stalled the litigation's natural course—shifting attention away from the underlying claims and preventing the case from proceeding on a complete record. This conduct neither interprets the law nor applies it to the core controversies, but leaves the evidentiary field incomplete. *Cf. United States v. Ritchie,* 342 F.3d 903, 908-909 (9th Cir. 2003). Such an omission exemplifies an administrative failure to fulfill a mandatory judicial task, rather than a valid exercise of adjudicatory discretion. *Moore*, 96 F.3d at 1243-44 (finding that a judge's refusal to consider or rule on critical motions implicates whether the judge's act was truly "judicial" in nature).

## VII.    CONCLUSION

**WHEREFORE, Plaintiff respectfully requests that this Court**:

a) Declare that Defendant Judge's actions violated Plaintiff's constitutional right to due process under the Fourteenth Amendment;

b) Declare that Defendant Judge's ruling on their own disqualification motion violated CCP § 170.4(d) and was therefore unlawful;

---

c)   Grant any further relief that the Court deems just and proper.

**Demand for Jury Trial:**

Plaintiff demands a trial by jury on all issues so triable.

"I, Daniel Ndizeye, Plaintiff in the above-captioned case, declare under penalty of perjury under the laws of the United States, pursuant to *18 U.S.C. § 1621*, that the foregoing is true and correct."

**Dated:** January 31, 2025.
**Name:** Daniel Ndizeye
**Phone Number:** (619) 394-2453
**Email:** danielndizeye100@gmail.com
**Address:** 711 51st St, San Diego, CA 92114-1001, USA

By: _____

**Pro Se, Plaintiff:** Daniel Ndizeye

**Daniel Ndizeye v. Judge Carolyn M. Caietti, in her official capacity as Judge of the Superior Court of California, County of San Diego**

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS - 19